# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| TABITHA KALLIO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security )<br>Administration, )<br>)<br>Defendant. ) | CAUSE NO.: 2:07-CV-406-JVB |

**OPINION AND ORDER**

Plaintiff Tabitha Kallio seeks judicial review of the final decision of the Defendant Commissioner of Social Security who denied her application for Disability Insurance Benefits under the Social Security Act. For the following reasons, the Commissioner's decision is confirmed in part and remanded in part.

**A. Procedural Background**

On September 22, 2004, the Plaintiff filed an application for Disability Insurance Benefits, alleging disability since November 1, 1997. The Plaintiff's application was denied on November 8, 2004, and also upon reconsideration on February 14, 2005. On February 25, 2005, the Plaintiff filed a timely request for a hearing, which was held, via video, on November 1, 2006. The Plaintiff and her attorney, Thomas R. Nash, appeared at a teleconference center in Gary, Indiana, before Administrative Law Judge Paul Armstrong, who was in Bowling Park, Illinois. Medical expert Dr. Daniel Girzadas and Vocational Expert Michelle M. Peters ("the VE") appeared and testified at the hearing. In a decision dated December 14, 2008, the ALJ

1

denied the Plaintiff's application for DIB, finding that the Plaintiff did not have a disability within the meaning of the Social Security Act. The ALJ found as follows:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2004.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 1, 1997 through her date last insured of June 30, 2004 (20 CFR §§ 404.1520(b) and 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: post traumatic stress disorder, back pain, and seizure disorder (20 CFR § 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, including sections 1.04, 11.02, 11.03, 12.04, and 12.06 (20 CFR §§ 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity for light postural work (sit/stand/walk 6 hours out of an 8 hour work day) but sedentary exertional work (10# maximum lift/carry/push/pull), frequent forceful gripping bilaterally, no work at unprotected heights or around dangerous moving machinery, open flames, or bodies of water, no climbing of ropes, ladders, or scaffolds, and no more than superficial contact with supervisors, co-employees, and the general public.
>
> 6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR § 404.1565).
>
> 7. The claimant was born on November 10, 1971 and was 32 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR § 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. The claimant has no transferable skills within her maximum residual functional capacity.
>
> 10. Through the date last insured, considering the claimant's age, education,

work experience, and residual capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. (20 CFR §§ 404.1560(c) and 404.1566).

The Plaintiff filed a timely Request for Review with the Social Security Administration Appeals Council. On September 28, 2007, the Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

The Plaintiff filed a Complaint on November 13, 2007, and an opening brief on April 24, 2008. On August 8, 2008, the Commissioner responded, to which the Plaintiff replied on August 22, 2008.

**B. Factual Background**

The Plaintiff completed the 12th grade and attended college for two years, earning an associate's degree as a medical assistant. Her employment experience includes work as a retail office clerk, deli clerk, waitress, and cook. The Plaintiff represents that her health problems interfered with her externship as a medical assistant in 1999. The Plaintiff experienced limitations in her ability to stand for prolonged periods of time, an inability to bend and lift weight, loss of feeling in her legs, back pain, low blood pressure, and hand cramps. The Plaintiff has a history of myoclonic epilepsy, carpal tunnel syndrome, bipoloar disorder, and post traumatic stress disorder.

**(1)** *Medical Evidence*

In 1995, the Plaintiff injured her back while serving in the military. In November 1999, the Plaintiff saw a chiropractor, Dr. Daniel R. Dewar, for neck, back, and leg pain. Dr. Dewar noted tenderness in the Plaintiff's cervical and lumbar regions and a reduced range of motion.

3

The Plaintiff continued to seek treatment at the VA Chicago Health Center for depression and back, lower extremity, arm, hand, and neck pain. In 2003, the Plaintiff underwent a tilt table test, during which she turned blue and passed out. The Plaintiff's treating physicians at the VA Chicago Health Center diagnosed her with chronic low back pain, bilateral carpal tunnel syndrome, arthritis, post-traumatic stress disorder, depression/anxiety disorder, Somatization disorder, mixed personality with borderline and histrionic features, syncope and episodes of dizziness. The physicians also assigned the Plaintiff a Global Assessment of Functioning score of 45.[1]

The Plaintiff began receiving therapy to treat her symptoms. On March 31, 2004, the Plaintiff developed obsessive-compulsive symptoms. A mental examination revealed that the Plaintiff was not suicidal, homicidal, or delusional. An April 6, 2004, medical exam revealed that the Nefazedone the Plaintiff was prescribed was providing a good response.

In May 2004, the Plaintiff complained of post traumatic stress disorder, decreased sleep, anxiety, crying spells, and nightmares about her past. However, her mental examination was essentially normal and she was given a Global Assessment Functioning score of 65, which indicated mild symptoms. Her Nefazedone prescription was increased, which she later reported was effective.

In November 2004, Dr. J. Gange, a state agency psychologist, prepared a psychiatric review of the Plaintiff for the Social Security Administration. The doctor opined that the Plaintiff had mild restrictions in the activities of daily living, social functioning and maintaining

---

[1] The Global Assessment of Functioning is a rating of overall psychological functioning. A rating of 41-50 denotes: serious symptoms (e.g. suicidal ideation, severe obsession rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. 2000).

concentration, persistence, and pace. Dr. Gange determined that the Plaintiff's limitation was mild because she did not receive psychological treatment from the onset date of her disability until after June 2004.

On December 6, 2004, a non-examining state agency physician opined that the Plaintiff had the residual capacity to occasionally lift fifty pounds, frequently lift twenty-five, and stand and sit for six hours in an eight hour workday. Additionally, the Plaintiff could perform all postural activities frequently and should avoid concentrated exposure to vibration and moderate exposure to hazards such as machinery and heights.

The Plaintiff continued to receive care at the VA hospital from December 2004 through November 2006. The Plaintiff's treating physicians noted that she suffered from epilepsy, depression, bipolar disorder, post traumatic stress disorder, and chronic back pain. On January 9, 2005, Dr. Sarah Wessinger, the Plaintiff's primary care physician, prepared a physical residual functional capacity questionnaire. She diagnosed the Plaintiff with chronic lower back pain, carpal tunnel syndrome, chronic low blood pressure, and opined that the Plaintiff's depression and post-traumatic stress disorder contributed to the severity of her physical symptoms. Dr. Wessinger listed the Plaintiff's medications and reported that the Plaintiff had no side effects from her medications that impaired her ability to work. Dr. Wessinger indicated that the Plaintiff needs to shift positions at will from sitting, standing, or walking, but did not need to take unscheduled breaks during a workday. Dr. Wessinger opined that the Plaintiff could lift twenty pounds occasionally and ten pounds frequently, but was significantly limited in her abilities to reach, handle, or finger repetitively, and could only stoop or crouch for thirty percent of the workday.

On January 31, 2005, Dr. Langley, the Plaintiff's treating psychiatrist, prepared a physical residual functional capacity questionnaire. She diagnosed the Plaintiff with post-traumatic stress disorder, bipolar disorder II, chronic pain disorder, and possible somatization disorder. Dr. Langley opined that the Plaintiff was limited to sitting less than two hours in an eight hour work day, could not stand or walk for more than two hours, could not lift or carry, was significantly limited in repetitive reaching, handling, and fingering, could only crouch or stoop for five percent of the workday, and was unable to perform even low stress jobs.

In February, 2005, the Plaintiff saw Dr. Patricia Wasisco for psychotherapy to treat her military sexual trauma. Dr. Wasisco found that the Plaintiff had difficulty sleeping and suffered back pain.

Later, on February 17, 2006, Dr. Langley prepared another physical residual function capacity questionnaire. Dr. Langley noted that the Plaintiff suffered from a chronic pain disorder, dizziness, erratic behavior, and exhibited hostile outbursts. She opined that the Plaintiff was incapable of even a low stress job and that her pain was severe enough to frequently interfere with her attention and concentration. Dr. Langley further stated that the Plaintiff would be absent from work more than she would be there and she had marked restrictions in activities of daily living and social functioning. At this time Dr. Langley gave the Plaintiff a GAF of 46, indicating serious impairment to her psychological functioning.

On July 13, 2006, Dr. Langley noted that the Plaintiff was not able to sustain any meaningful activity in the course of a workday. However, on October, 3, 2006, the Plaintiff was found to be able to keep her mood and anger under control and her mental status examination was normal. Dr. Langley noted that the Plaintiff's bipolar and post traumatic stress disorders

6

improved, resulting in a decrease in her medication.

**(2)** *Plaintiff's Hearing*

On November, 1, 2006, the ALJ convened the video conference hearing at which the Plaintiff, her attorney, the VE, and Dr. Girzadas appeared. The Plaintiff testified that she had difficulty standing for long periods of time, bending, lifting, and sleeping, and needed to be able to shift or stand. She further testified that she would lose feeling in her legs, would blackout on occasion, and experienced cramps when making repetitive movements. The Plaintiff indicated that she is limited in her ability to perform daily activities, such as completing household chores, driving, and standing for prolonged periods of time. Furthermore, the Plaintiff started experiencing seizures in 1995 or 1996, with the last one occurring approximately one month before the hearing. The Plaintiff's testimony concluded with discussion of her inability to control her anger due to her mental health conditions.

Dr. Girzadas was next to testify. He indicated that the Plaintiff's EEG was consistent with her diagnosis of epilepsy, but stated that the Plaintiff's medication generally controlled the condition. In regards to the Plaintiff's back pain, Dr. Girzadas testified that the Plantiff's MRI and x-rays revealed minor degenerative arthritis, but her spine was normal. He also stated that the Plaintiff's EMG was not indicative of carpal tunnel syndrome and in his opinion she was unable to perform household chores because she was always crying. On the basis of this information, Dr. Girzadas believed the Plaintiff could lift ten pounds occasionally and less than ten pounds frequently, stand for at least six hours in an eight hour day, push and pull less than ten pounds, occasionally use ramps and stairs, never using ladders, occasionally balance and crouch, frequently handle and finger, and should avoid industrial vibrations and hazards. He

7

further opined that the Plaintiff was limited to light work.

Finally, the VE testified. The VE stated that the Plaintiff's past work ranged from unskilled light work to skilled work with medium physical demand. The VE testified that a person limited to sedentary exertional positions that included lifting no more than ten pounds, no climbing or work at unprotected heights or near machinery, and no working around dust or fibers, could not perform any of the Plaintiff's past jobs, with the exception of retail office clerk. However, if the same hypothetical individual was also limited to no more than superficial contact with others due to stress problems, the individual could not perform the retail office clerk position either. However, the hypothetical individual would be able to fill janitorial (3,000 positions), hand picker (3,500 positions), and assembly positions (4,000 positions). If the same individual could have more than superficial contact with others, but suffered carpal tunnel syndrome, she would be able to fill one of approximately 2,000 receptionist positions, 1,500 information clerk positions, or a hostess position. However, if the same individual was off task fifteen minutes of every hour or had to lay down twice a day, she would be eliminated from all jobs.

**(3)** *ALJ's Decision*

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ found that the Plaintiff had severe impairments of post traumatic stress disorder, back pain, and seizure disorder. However, the Plaintiff's condition did not meet or equal one of the listed impairments. The Plaintiff's seizures failed to satisfy the requirements of listings 11.02 and 11.03 because they were not of the frequency described by the listings. The ALJ found that the Plaintiff failed to meet listing 1.04 because she did not have a spinal disorder.

Finally, the Plaintiff's mental impairments were not severe enough to satisfy sections 12.04 or 12.06.

The ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform exertional sedentary work but only light postural work. The ALJ based his findings on all of the Plaintiff's symptoms and the extent which they could reasonably be accepted as consistent with objective medical evidence. The ALJ stated that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms were not entirely credible. The ALJ reasoned that the Plaintiff's daily activities were not limited to the extent one would expect given the disabling symptoms. He further noted that the Plaintiff's testimony regarding her difficulty with prolonged standing and sitting were not supported by the medical record.

The ALJ stated that he relied on the testimony of Dr. Girzadas and gave little weight to the state agency's and treating physicians' RFC findings, deeming them inconsistent with the medical record. On the basis of Dr. Girzadas' RFC findings, the ALJ found that the Plaintiff was unable to return to her past relevant work, but that jobs exist in significant numbers in the economy that the Plaintiff could perform, including light janitorial jobs, hand packaging, and assembler.

**C. Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Social Security agency. 42 U.S.C. § 405(g). Upon judicial review, the court will only consider whether the ALJ's findings are supported by substantial evidence and made under the correct legal

9

standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In issuing his opinion, the ALJ must, at minimum, state his analysis of the evidence so a reviewing court can make an accurate decision. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Although an ALJ is not required to address all the evidence, "the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) . The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). In determining whether the ALJ has satisfied this burden, the court will not re-weigh evidence or make decisions of credibility. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

**D. Disability Standard**

To qualify for Disability Insurance Benefits the claimant must establish that she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

**E. Analysis**

The Plaintiff claims that the ALJ erred by finding she was not disabled within the meaning of the Social Security Act and denying her disability income benefits. The Plaintiff asserts the following arguments in support of her claim: (1) the ALJ failed to properly weigh the opinions of the Plaintiff's treating Psychiatrist; (2) the ALJ failed to analyze significant evidence that is favorable to the Plaintiff; (3) the ALJ's RFC assessment was incomplete; (4) the ALJ's credibility analysis was insufficient; (5) the ALJ erred when he failed to identify and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles; (6) the ALJ failed to address the VE's testimony that was favorable to the Plaintiff. The Court will address each of the Plaintiff's arguments in turn.

**(1)** *Dr. Langley's Opinion*

The Plaintiff first argues that the ALJ did not give sufficient weight to the mental diagnosis prepared by the Plaintiff's treating psychiatrist, Dr. Langley. A treating physician's opinion is to be given controlling weight unless well-supported contradicting evidence is introduced. *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). In such a case, the weight to be given to a treating physician's opinion is a fact sensitive determination. *Id.* at 377. Here,

11

Dr. Langley opined that the Plaintiff suffered from symptoms such as poor memory, sleep and mood disturbances, personality changes, recurrent panic attacks, difficulty thinking or concentrating, loss of interest in activities, and was socially withdrawn, anxious, and hostile. However, Dr. Gange's findings were not consistent with Dr. Langley's opinion. Rather, basing his opinion on the record, Dr. Gange found that the Plaintiff had mild limitations due to her mental condition and her systems were usually triggered by situational stressors. Since the medical evidence identified by Dr. Gange contradicted Dr. Langley's opinion, the ALJ was not required to give Dr. Langley's opinion controlling weight. Thus, the ALJ's reliance on the opinions of Dr. Gange and the medical record as a whole was permissible.

Dr. Langley also prepared an RFC report stating that the Plaintiff had restrictions in activities of daily living and social functioning. However the ALJ was not required to adopt Dr. Langley's RFC report. The ALJ must look at the record as a whole to determine the claimant's limitations and need not accept the opinions of physicians. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). It is the ALJ's duty, not the physician's, to determine the Plaintiff's RFC. *Id*. Since the Court will only remand in the absence of substantial evidence supporting the ALJ's decision, and here the medical record and the opinions of other physicians support the ALJ's position, the case will not be remanded on this issue.

**(2)** *Evidence Favorable to Plaintiff*

Although the ALJ gave sufficient weight to the impairments diagnosed by Dr. Langley that he considered, he entirely failed to address other impairments Dr. Langley diagnosed the Plaintiff with, including bipolar disorder II, chronic pain disorder, and somatization disorder.

The ALJ is required to articulate his reasons for accepting or rejecting evidence. *Heron*

*v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). He cannot simply ignore evidence that is unfavorable to his opinion. *Davis v. Barhnart*, 187 F. Supp. 2d 1050 (N.D. Ill. 2002). Rather, the ALJ must at least minimally discuss his reasons for excluding evidence presented by the claimant that contradicts his decision. *Id*. "An ALJ's failure to address evidence of a mental disability, when such evidence is clearly in the record, renders the ALJ's decision an impermissible lay opinion of 'rank conjecture.'" *Jones v. Apfel*, 997 F.Supp. 1085, 1092 (N.D. Ind.1997).

The ALJ failed to even mention several impairments Dr. Langley, the Plaintiff's treating psychologist, diagnosed her with. Although the ALJ is not required to give controlling weight to Dr. Langley's opinions, he must at least minimally articulate his reason for rejecting the diagnosed impairments. Here, the ALJ indicated that he gave little weight to Dr. Langley's physical diagnosis and residual capacity opinion, but he failed altogether to acknowledge Dr. Langley's mental diagnosis. Because the ALJ did not articulate any reason for ignoring these diagnosed impairments, the case must be remanded on this issue for further clarification.

**(3)** *RFC Finding*

The Plaintiff next asserts that the ALJ's RFC finding was incomplete because he failed to include the Plaintiff's bipolar and somatization disorders as severe impairments. The Plaintiff contends that there was ample evidence in the record demonstrating that she was diagnosed with and treated for these disorders. The Plaintiff argues that without considering these impairments as severe the ALJ neglected to add limitations and symptoms related to these impairments to the Plaintiff's RFC finding.

The ALJ's RFC decision must contain a thorough discussion of the medical evidence of

13

record, and discuss why any alleged functional limitations may or may not be accepted regarding the other medical evidence. SSR 96-8p. As discussed in the preceding section, the ALJ should have addressed the Plaintiff's bipolar and somatization disorders and articulated his reasons for either including or excluding these impairments as severe. In failing to address these disorders, the ALJ could not have considered the limitations imposed by these impairments. Thus, the ALJ's decision must be remanded to determine if the Plaintiff's bipolar and somatization disorders are severe and what effect, if any, they have on her RFC.

**(4)** *Credibility Analysis*

An ALJ's credibility finding is given great deference and will not be overturned unless patently wrong. *Diaz*, 55 F.3d 300, 308 (7th Cir. 1995). However, a credibility determination must contain specific reasons supported by the record. SSR 96-7. The Plaintiff asserts that the ALJ failed to provide sufficient support for his finding that the Plaintiff's testimony regarding the severity of her symptoms was inconsistent with her daily activities.

In his opinion, the ALJ stated that the Plaintiff's activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." However, the ALJ went on to give specific reasons for his decision. The ALJ explained that the Plaintiff's testimony regarding her difficulty with prolonged sitting and standing, her legs giving out, and her low blood pressure which causes her to pass out, was not supported by medical evidence of record. Thus, the ALJ sufficiently provided specific reasons for his credibility determination.

The Plaintiff additionally asserts that the medical record supports her complaints, rendering the inconsistencies identified in the ALJ's credibility determination inaccurate. However, the record indicates that the Plaintiff's dizzy spells were intermittent. Dr. Gizadas also

14

explained that the Plaintiff did not need a sit/stand option. He based his opinion on the lack of any abnormal neurological findings for the Plaintiff's lower extremities, the normal MRI scan of the Plaintiff's lumbar and thoracic spine, the normal x-ray of the Plaintiff's cervical spine, and a normal EMG. Thus, there is information in the record to support the ALJ's decision. Since an ALJ's decision will not be overturned unless patently wrong, and medical evidence supports his decision, the credibility determination must stand.

**(5)** *Conflicts with the Dictionary of Occupational Titles*

At the beginning of the VE's testimony, the ALJ asked him whether he would testify in accordance with the Dictionary of Occupational Titles and whether he would inform the court of any inconsistencies between his testimony and the information in the Dictionary of Occupational Titles. The Plaintiff asserts that this violates the ALJ's duty under SSR 00-4p to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles. SSR 00-4p places an affirmative duty on the ALJ to resolve conflicts between the evidence the VE has provided and the Dictionary of Occupational Titles after the VE has testified. *Harris v. Astrue*, 2008 WL 410577, *8 (N.D. Ind. 2008). The ALJ cannot transfer his duty to the VE. *Id.*

Furthermore, the Plaintiff points to several inconsistencies between the VE's testimony and the Dictionary of Occupational Titles that were not resolved. The ALJ found that the Plaintiff is limited to light postural work and sedentary exertional work. However, the jobs identified by the VE, including janitor and hand picker, require medium to heavy exertional work. Since the ALJ failed to resolve these inconsistencies, the case must be remanded on this issue as well.

**(6)** *VE's Testimony*

15

Finally, the Plaintiff argues that the ALJ failed to address testimony of the VE that was favorable to the Plaintiff. In particular the Plaintiff points to the VE's response to two hypothetical situations. First, the VE testified that if the Plaintiff was limited in her ability to perform fine finger movement she would be eliminated from the hand packer and assembler jobs. Then, the VE testified that if the Plaintiff could not work fifteen minutes every hour or would miss more than two days of work per month, there were no jobs in the economy she could perform. However, the ALJ did not discuss these limitations in his ruling.

The cases the Plaintiff points to in support of her argument involve inconsistencies between the limitations in the ALJ's RFC finding and the VE's testimony regarding the number of jobs available to the plaintiff. For example, in *Sayles v. Barnhart*, the ALJ found that the Plaintiff, who could not work at unprotected heights, had 28,000 jobs available to her although the VE stated that none of the jobs would be available if the plaintiff could not be exposed to unprotected heights. 2001 WL 1568850, *9 (N.D. Ill. 2001). However, here there is no such inconsistency because the ALJ did not find that the Plaintiff was limited in fine finger movement, could not work fifteen minutes every hour, or that she would miss more than two days of work per month. Requiring the ALJ to explain his reasoning for rejecting testimony of the VE that is inconsistent with his RFC finding would be redundant since the ALJ is already required to explain the reasoning for his RFC finding. Thus, it is not necessary for the ALJ to address the VE's testimony on this matter.

CONCLUSION

Based on the foregoing, the matter is affirmed in part and remanded in part to the ALJ for further consideration.

SO ORDERED on February 27, 2009.

    S/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE